# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.     CRIMINAL ACTION NO.  3:21-00221

THOMAS JOSHUA CARTER

## MEMORANDUM OPINION & ORDER

Before the Court is the Notice of the United States to Introduce Evidence Pursuant to Rule 404(b), *see* ECF No. 86, and Defendant's Response in Opposition to the Notice of the United States to Introduce Evidence Pursuant to Rule 404(b), *see* ECF No. 93.

The Court **OVERRULES** Defendant's Opposition. Although Eaves' testimony is *not* intrinsic evidence, it may be presented at trial under Federal Rule of Evidence 404(b).

## BACKGROUND

The Government seeks to introduce the testimony of Scottie Eaves—a neighbor of Defendant Thomas Carter. *See* Govt. Notice at 2. On April 4, 2024 and April 18, 2024, Corporal E.R. Robinett of the West Virginia State Police visited Eaves. *See* Govt. Notice at 2. Robinett recorded both encounters. *See* ECF No. 97. Upon request and consent of the parties, the Government shared videos of these interviews with the Court. *See id.*

In the April 4th interview, Eaves states Carter invited him to his property to help cut brush. The property looked like a "jungle." During the visit, Carter invited Eaves into his camper. Inside, Eaves saw three "nicely-machined AKs" with no serial numbers, two "ARs," and a "wall locker" full of ammunition. Carter then handed firearms to Eaves.

In the April 18th interview, Eaves reiterates the AK he held did not have a serial number. When Robinett presents photographs of firearms seized at Carter's property, Eaves identifies a green firearm, a .22 single-action firearm, and an "AK." He also reiterates he saw a "wall safe" in a bedroom and the safe Carter "kept in his car." When asked when he visited Carter, he could not remember whether it was "hot outside, cold outside, summer, or spring."

Based on these interviews, the Government expects Eaves to state he visited Carter's property at least twice before August 23, 2020 (the date of the offense). *See* Govt. Notice at 2. On one occasion, Eaves entered his camper. *See id.* Inside, Carter showed Eaves firearms. *See id.* Eaves held at least one firearm. *See id.* He also saw a gray safe and ammunition in boxes. *See id.* Eaves will then identify at least three firearms from the firearms seized inside the camper. *See id.*

On May 20, 2024, the Government informed the Court the "seized firearms identified by Scottie Eaves in his April 18, 2024 interview do have serial numbers." ECF No. 98 at 1.

## ANALYSIS

The Government makes two arguments. *First*, Eaves' testimony is intrinsic evidence. *See* Govt. Notice at 1. *Second*, if not intrinsic, Eaves' testimony can still be presented at trial under Federal Rule of Evidence 404(b) to establish Carter's knowledge, lack of mistake, and an ongoing pattern of conduct. *See id.* at 4. The Court considers each argument in turn.

### I

Federal Rule of Evidence 404(b) prohibits admitting evidence of another "crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Rule 404(b) allows evidence of other acts or crimes if used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Importantly, not all prior bad acts are encompassed by Rule 404(b). *See United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012). Instead, Rule 404(b) excludes only "extrinsic" evidence—that is, evidence "separate from or unrelated to the charged offense." *United States v. Bush*, 944 F.3d 189, 195 (4th Cir. 2019). "Intrinsic" acts "do not fall under Rule 404(b)'s limitations." *Id.* at 195–96 (quotation omitted). Acts are "intrinsic" when they arise "out of the same . . . series of transactions as the charged offense" or are "necessary to complete the story of the crime on trial." *United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir. 1994) (quotation omitted).

Three cases illuminate the difference between extrinsic and intrinsic evidence. In *United States v. Kennedy*, Joseph Kennedy was charged with conspiracy to distribute cocaine and possession with the intent to distribute cocaine. *See id.* at 881. At trial, the Government introduced evidence describing Kennedy's drug distribution activities with suppliers not named in his indictment. *See id.* at 885. On appeal, Kennedy argued the testimony was barred by Rule 404(b) as extrinsic evidence because it described a separate conspiracy with different people outside the temporal scope of the indictment. *See id.* The Fourth Circuit disagreed. The testimony helped "complete the story of the crime on trial" by proving Kennedy's participation in drug distribution activities and addressing how Kennedy got the cocaine he supplied. *Id.* at 885–86 (explaining the testimony showed "how Kennedy's group obtained its cocaine and how that group related to and became part of the bigger [drug] conspiracy"). *See also United States v. Brizuela*, 962 F.3d 784, 794 (4th Cir. 2020) (calling *Kennedy* the "seminal" case on the "complete the story" doctrine).

In *United States v. McBride*, Frederick Lamar McBride participated in a 2009 drug sale at the Nu Vibe Club in Clarendon, South Carolina. *See* 676 F.3d at 389–90. The Government charged with him with possession of cocaine with an intent to distribute. *See id.* At trial, the Government introduced evidence of a 2008 encounter where a confidential informant attempted to purchase

cocaine from the defendant at his residence. *See id.* at 390–91. This time, the Fourth Circuit held the evidence was *not* intrinsic. The Court explained "nothing that occurred at McBride's residence in January 2008 was necessary to 'complete the story' of the crimes alleged in the club." *Id.* Instead, the evidence suggested the defendant was a "drug dealer"—the "very type of evidence that the limitation imposed by Rule 404(b) was designed to exclude." *Id.* at 398.

Finally, in *United States v. Brizuela*, Dr. Felix Brizuela was charged with unlawfully distributing controlled substances under 21 U.S.C. § 841 by forging twenty-one opioid prescriptions for several patients. *See* 962 F.3d at 786. At trial, the Government introduced evidence of four patients who received prescriptions *not* referenced in the indictment. *See id.* at 796. Relying on *Kennedy* and *McBride*, the Fourth Circuit held the evidence was *not* intrinsic. The Court explained § 841 requires the Government to cite a "specific prescription" in its indictment. *Id.* As a result, the "relevant 'story' for a § 841 offense is whether in writing the cited prescription, the defendant doctor was treating the *patient receiving the prescription* within the bounds of professional medical practices." *Id.* at 797. Evidence of other, non-specified faulty prescriptions did not help prove any specific element of the charged offenses. *See id.* at 796. Instead, the evidence constituted "overkill" or "piling-on" by the prosecution to highlight the "extent and severity" of the defendant's behavior. *Id.* at 796–97.

Collectively, the "complete the story" caselaw requires the context provided by uncharged acts "do more than simply show the 'extent' or 'severity' of alleged violations" to be intrinsic. *Id.* at 797. The evidence must "complete the story *of the crime[s] on trial.*" *Kennedy*, 32 F.3d at 885 (emphasis added). In other words, the Court must take a "hard look" to ensure there is a "clear nexus" between the evidence and the story of the charged offense. *Brizuela*, 962 F.3d at 795.

Applying this standard, the Court finds Eaves' testimony is not intrinsic. To succeed, the Government must prove Carter possessed the firearms listed in the Second Superseding Indictment. *See United States v. Saunders*, 501 F.3d 384, 394–95 (4th Cir. 2007) (upholding jury instruction under § 922(g) requiring Government to prove defendant "possessed at least one specific gun listed in the indictment"); *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (requiring the Government prove the defendant "knowingly possessed the firearm specified in the indictment"). The Government insists the firearms identified by Scottie Eaves have serial numbers. *See* ECF No. 98. However, in his April 4th and April 18th interviews, Eaves spontaneously states none of the firearms he saw or held in Carter's camper had serial numbers. Eaves also cannot remember when he visited Carter's camper. Given the serial number inconsistency and the lack of definitive temporal proximity, the Court is hard-pressed to find Eaves observed Carter possessing the specific firearms referenced in the Second Superseding Indictment. As such, his testimony does not help to "complete the story of the crime[s] on trial." *Kennedy*, 32 F.3d at 885. Instead, they show the extent to which Carter unlawfully possessed firearms. It is, therefore, extrinsic—not intrinsic—evidence and is governed by Rule 404(b).

## II

The Government pivots. It argues Eaves' testimony is admissible under Rule 404(b) because it shows Carter's knowledge, lack of mistake, and an ongoing pattern of conduct. *See* Govt. Notice at 4. The Court agrees.

Remember—Rule 404(b)(1) prevents parties from offering extrinsic evidence of a defendant's other bad crimes or bad acts to show the defendant acted in conformity with those prior actions. *See Brizuela*, 962 F.3d at 797. But bad crimes or bad acts *can* be admitted if offered for another purpose such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or

absence of mistake or accident." Fed. R. Evid. 404(b)(2). This list is not exhaustive. *See United States v. Owens*, 2022 WL 1040353, at *1 (S.D. W. Va. Apr. 6, 2022). Indeed, Rule 404(b) is "not meant to sweep under the rug evidence that has appreciable value beyond proving 'only criminal disposition.'" *Id.* (quoting *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009)).

The Fourth Circuit uses the four-part *Queen* test to determine whether a particular bad act is admissible. *See United States v. Dickerson*, 2024 WL 79226, at *2 (E.D. Va. Feb. 22, 2024). *First*, the prior act must be "relevant" to an issue other than character (*e.g.* an element of the offense). *See United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). *Second*, the prior act must be necessary to an "essential part of the crimes on trial" or to the "context of the crime." *Id.* at 998. *Third*, the prior act must be reliable. *See id.* at 997. *Finally*, the prior act's probative value cannot be substantially outweighed by unfair prejudice. *See id.* Said more succinctly: "if prior-act evidence is relevant, necessary, and reliable, it then must pass the Rule 403 balance" test. *United States v. George*, 597 F. Supp. 3d 832, 837 (E.D.N.C. 2022). If it does, it is admissible. *See id.*

Eaves' testimony satisfies these requirements. *First*, the testimony is relevant. Eave's testimony is relevant to Carter's knowledge, intent, and absence of mistake in possessing firearms and ammunition on his property. In a case "where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." *United States v. Brown*, 398 F. App'x 915, 917 (4th Cir. 2010) (quotation omitted). This is especially true in cases of "constructive possession." *Id.* at 917. *See also United States v. Byers*, 649 F.3d 197, 209 (4th Cir. 2011) ("Put simply, the fact that [the defendant] knowingly possessed a firearm in a car on a previous occasion makes it more likely that he knowingly did so this time as well, and not because of accident or mistake.") (quotation omitted).

Carter is charged, *inter alia*, with possessing firearms in his camper. He claims he did not have constructive possession of the camper. *See* Def.'s Opp'n at 6. Eaves' testimony suggests otherwise. According to Eaves, Carter invited him inside his camper, showed him several firearms (including ARs, AKs, and pistols) and ammunition, and allowed Eaves to hold at least one firearm. Although not dispositive on the possession question, Eaves' testimony suggests Carter had at least some access to and knowledge of the camper, firearms, and ammunition at issue in this case. *Cf. Brown*, 398 F. App'x at 917 (allowing evidence of the defendant's prior possession of firearms in case of constructive possession under § 922(g) because evidence helped show defendant exercised dominion and control over the firearm in the case at issue).

Yes, there are differences between Eaves' testimony and the charged offense. *See* Def.'s Opp'n at 6 (arguing Carter was not in the camper showing off firearms when arrested). But "past conduct need not be identical to the conduct charged." *United States v. Van Metre*, 150 F.3d 339, 350 (4th Cir. 1998). Instead, the two just need to be "similar enough." *Id.* Here, Eaves' testimony and the charged offense involve the same defendant, the same location (camper), the same safes (Winchester and Machir), and similar firearms. This is sufficient for Rule 404(b) purposes.

*Second*, Eaves' testimony is necessary. Evidence is necessary if it is "probative of an essential claim or an element of the offense." *United States v. Rooks*, 596 F.3d 204, 211–12 (4th Cir. 2010). It need not be "critical" to the prosecution's case. *Id.* at 211. While the parties may enter the a stipulations in this case, *see* Def.'s Opp'n at 5–6 (suggesting Carter had knowledge of the firearms), Carter's plea of not guilty places his knowledge of and intent to possess the charged firearms at issue, *see* ECF No. at 80. It will, therefore, be "necessary" to show these elements. *See, e.g.*, *Sterling*, 860 F.3d at 247 ("[A] not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent.").

*Third*, Eaves' testimony is reliable. In both interviews, Eaves recalls meeting Carter in his camper, seeing firearms he recognized by type, noticing a wall safe with ammunition inside, handling at least one firearm, and observing the condition and characteristics of the firearms. He spontaneously states none of the firearms he saw or handled had serial numbers. These comments suggest Eaves has some experience working with firearms.

True—Eaves cannot remember when he visited Carter's camper. But the passage of time between his visit and the instant offense does not render his testimony less reliable given the similarity between his testimony and the instant offense. *See United States v. Sterling*, 860 F.3d 233, 247 (4th Cir. 2017) ("Although the Rule 404(b) evidence was fairly old in this case, it did bear sufficient similarity in terms of pattern of conduct to justify its admission."); *United States v. White*, 405 F.3d 208, 213 (4th Cir. 2005) ("Further, as the district court noted, although Cassandra's testimony concerned events that were remote in time form the charged offense, the evidence was nonetheless probative because it involved prior drug transactions between White and Cassandra—both of whom were named as coconspirators in the present indictment.").

Overall, Eaves' testimony is not "so preposterous that is could not be believed by a rational and properly instructed juror." *United States v. Hornsby*, 666 F.3d 296, 308 (4th Cir. 2012) (quotation omitted). Instead, it carries sufficient indicia of reliability that will be subject to cross-examination. *Cf. Queen*, 132 F.3d at 998 (holding witnesses testifying to prior acts subject to cross-examination were reliable even when they were "testifying pursuant to agreements for favorable treatment in their cases").

*Finally*, the probative value of Eaves' testimony outweighs any danger of unfair prejudice. For starters, prior acts evidence admissible under Rule 404(b) is not barred by Rule 403 unless the evidence involves conduct "more sensational or disturbing than the crimes with which [the

defendant is] charged." *United States v. Byers*, 649 F.3d 197, 209 (4th Cir. 2011). Here, Eaves' prior encounter with Carter involves the same location and similar firearms as the charged conduct. As such, there is a small likelihood the "jury would be provoked to behave irrationally." *United States v. Comstock*, 412 F. App'x 619, 624 (4th Cir. 2011). Moreover, the Government informed Carter more than thirty days before trial of its intent to admit Eaves' testimony. *See* ECF No. 86 (providing notice on May 3, 2024). When the prosecution provides notice and does not plan to "plac[e] the defendant's entire life on trial," the fear of "trial by ambush" recedes. *Queen*, 132 F.3d at 997. Lastly, the Court may issue a limiting instruction to the jury. *See White*, 405 F.3d at 213 ("[A]ny risk of [] prejudice was mitigated by a limiting instruction from the district court clarifying the issues for which the jury could properly consider this evidence.").

In sum, Eaves' testimony is relevant, necessary, reliable, probative, and not unfairly prejudicial. It satisfies the four *Queen* factors. As a result, it is admissible under Rule 404(b).

## CONCLUSION

Defendant's Response in Opposition to the Notice of the United States to Introduce Evidence Pursuant to Rule 404(b) is **OVERRULED**. *See* ECF No. 93. The Government may introduce the testimony of Scottie Eaves in its case-in-chief under Rule 404(b). *See* ECF No. 86.

The Court **DIRECTS** the Clerk to send a copy of this Opinion and Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals Service.

ENTER: May 23, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE